David S. Norris (AZ Bar No. 034309)
david.norris@squirepb.com
Petrina A. McDaniel (*pro hac vice*)
petrina.mcdaniel@squirepb.com
Amy Brown Doolittle (*pro hac vice*)
amy.doolittle@squirepb.com
Shing C. Tse (*pro hac vice*)
shing.tse@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: (602) 528-4000 | Fax: (602) 253-8129

*Attorneys for Defendant Safeway Inc.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ashley Ehrmantraut, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Safeway Inc.<br><br>Defendant. | Case No. CV-23-1739-PHX-SMB<br><br>**DEFENDANT SAFEWAY INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## MOTION TO COMPEL ARBITRTATION AND DISMISS PLAINTIFF'S COMPLAINT

## I.   INTRODUCTION

The Court should dismiss Plaintiff Ashley Ehrmantraut's ("Plaintiff") Class Action Complaint ("Complaint") against Defendant Safeway Inc. ("Safeway") because the sole claim asserted in the Complaint is subject to mandatory individual arbitration. Plaintiff alleges that Safeway violated the Telephone Consumer Protection Act ("TCPA") based on text messages Plaintiff allegedly received from Safeway. Plaintiff asserts a single-count TCPA claim on behalf of herself and a putative class. The parties' arbitration agreement, however, requires Plaintiff to pursue her claim in an individual arbitration and bars her from pursuing this class action in court.

Specifically, in March 2023, Plaintiff enrolled in Safeway's loyalty program through Safeway's mobile app. In so doing, Plaintiff provided Safeway with her mobile phone number and affirmatively accepted Safeway's Terms of Use, which includes a mandatory arbitration provision requiring the parties to arbitrate "all controversies, claims, counterclaims, or other disputes arising between [Plaintiff] and [Safeway]" relating to Plaintiff's use of Safeway's websites or mobile app. The arbitration provision further incorporates the JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules"), which state that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, No. CV 19-10337-DSF (JPRx), 2020 WL 2730926, at *2 (C.D. Cal. Mar. 13, 2020) (quoting JAMS Rules); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue.").

Safeway thus brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act to enforce its contract with Plaintiff, seeking an order compelling individual[1] arbitration and dismissing Plaintiff's Complaint. *See* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *Johnmohammadi v. Bloomingdale's, Inc.*, 735 F.3d 1072, 1074 (9th Cir. 2014) (finding that when a court orders all claims and parties to arbitration, it has discretion to dismiss the action).

## II.     BACKGROUND

### A.     Allegations in the Complaint

Plaintiff Ashley Ehrmantraut ("Plaintiff") alleges that Safeway "caused multiple text messages to be transmitted" to her cellphone number ending in 9487 ("Plaintiff's Number"), which she uses for residential purposes. Compl. ¶¶ 9, 17. She alleges that she asked

---

[1] Class action waivers, such as the one contained in the arbitration provision here, are valid and must be enforced according to their terms. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415-19 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

Safeway "many times to stop contacting her" and made the "first stop request" on June 28, 2023.  Compl. ¶ 10.  According to the Complaint, Plaintiff received text messages from Safeway on July 5, 2023, July 12, 2023, July 13, 2023, and July 25, 2023.  The Complaint attaches screenshots purportedly showing the text messages between Plaintiff and Safeway.  Compl. ¶ 9.  The messages that Plaintiff allegedly received related to Safeway's Weekly Ad, the "Safeway for U" program, the "Flavor Adventure" program, and the "FreshPass" program.  *Id*.  Plaintiff alleges that the text messages were intended "to solicit the sale of consumer goods and/or services" and were "to advertise, promote, and/or market Defendant's property, goods and/or services."  Compl. ¶¶ 12-13.

Because Plaintiff alleges that she received "at least two solicitations after Plaintiff's initial opt-out request," Plaintiff claims that Safeway "does not honor consumer requests to opt-out of text message solicitations," which "demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list."  Compl. ¶¶ 14-15, 19.  Based on these allegations, Plaintiff asserts a cause of action under section 227(c) of the TCPA for violations of section 64.1200(d) of the TCPA's implementing regulations.  Compl. ¶¶ 35-44.

Plaintiff seeks to represent a nationwide class (the "Class") comprised of:

> **INTERNAL DO NOT CALL CLASS:  All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's goods, products, or services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive future text messages.**

Compl. ¶ 24.

### B.      The Arbitration Agreement.

Safeway is a grocery store chain operating as a banner of Albertsons Companies, Inc. ("ACI"), one of the largest food and drug retailers in the United States. Exhibit 1, Declaration of Kevin Michael ("Michael Decl."), at ¶ 5.  Safeway operates in states across

the country, including in Arizona. *Id*. Safeway offers a loyalty program for its customers called "Safeway for U™" ("Safeway for U"). *Id*. at ¶ 6. The Safeway for U program offers Safeway customers weekly personalized deals, digital coupons, rewards, and other perks, including discounts on certain products. *Id*. Safeway customers must create a Safeway for U account to become a member of the program. *Id*. at ¶ 7. There are multiple ways customers can create a Safeway for U account, including by registering for an online account at safeway.com (the "Website") or through Safeway's mobile app (the "App"). *Id*. at ¶ 11. There is no cost to create an account. *Id*. at ¶ 8. A Safeway for U online account is required to make purchases via the Website or the App, but an account is not required to shop in-store. *Id*. at ¶ 12. Safeway for U accounts are assigned a unique 11-digit Loyalty Card Number and a unique 12-digit Household ID. *Id*. at ¶ 21.

To create an online Safeway for U account via the App, users must first download the App. *Id*. at ¶ 14. Once downloaded, users are prompted to enter either their mobile phone number or email address. *Id*. at ¶ 15; Exhibit 1(B).

In addition, this first screen contains a hyperlink to ACI's Terms of Use, last updated November 8, 2022 ("TOUs"), which includes an arbitration agreement. *Id.*; Exhibit 1(A). Users who opt to provide their mobile phone number are sent a verification code via text message. Exhibit 1, Michael Decl. at ¶ 15. On the next screen, users are instructed to enter the verification code they received. *Id.*; Exhibit 1(B). Users must enter the verification code to proceed to the next screen. *Id.* Before entering the verification code, users are notified that "[b]y continuing, you acknowledge you have read and agree to our Terms of Use, including understanding that disputes will be arbitrated:"



Exhibit 1, Michael Decl. at ¶ 16; Exhibit 1(B).  The notice is in a standalone paragraph, and the phrase "Terms of Use" is underlined, distinguishing the phrase from the surrounding text.  *Id*.  "Terms of Use" is also hyperlinked, allowing consumers to click the link to view the complete TOUs before creating an account.  *Id*.  After entering the verification code, users must click the "Continue" button appearing at the bottom of the screen.  *Id*.  The

"Continue" button is grayed out and cannot be clicked until users enter the verification code. *Id*. at ¶ 18. After users enter the verification code, the "Continue" button turns red and becomes clickable. *Id*. at ¶ 19. Users must click "Continue" to create an online account. *Id*.

The TOUs contain a mandatory arbitration provision and a class action waiver. Exhibit 1(A), at § 24.

At all relevant times, the TOUs were prefaced with the following disclaimer in bold, capital letters:

> **ATTENTION: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 24 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE COMPANY (AS DEFINED BELOW) ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

Exhibit 1(A), the Terms of Use ("TOUs"). Section 24 of the TOUs (the "Arbitration Agreement") further provides:

> (a) Except for cases involving claims for public injunctive relief (as defined by law), you and Company agree that all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites (each a "Claim") will be resolved through binding and final arbitration instead of through court proceedings. **This agreement to arbitrate means that each of you and Company waive your/its respective rights to a jury trial**. Any and all Claims shall be submitted for binding arbitration in accordance with the JAMS Streamlined Arbitration Rules & Procedures that are in effect at the time arbitration is initiated ("JAMS Rules"). You may, in arbitration, seek any and all remedies otherwise available to you under applicable federal, state or local laws, except as provided below in subsection (f) of this Section 24. If you decide to initiate arbitration, you agree to pay an arbitration initiation fee

of $250 (unless the fee is waived as discussed in subsection (b)(4) of this Section 24), and Company will pay the remainder of the arbitration initiation fee and all other costs of the arbitration proceeding, including the arbitrator's fees. The arbitration will be held at a location in your hometown area unless you and Company both agree to another location or telephonic arbitration.

*Id*. at § 24(a) (emphasis in original).

Section 24 of the TOUs further states:

Neither you nor Company may act as a class representative, nor participate as a member of a class of claimants, with respect to any Claim. Claims may not be arbitrated on a class or representative basis. The arbitrator can decide only your and/or Company's individual Claims. The arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated. Accordingly, you and Company agree that the JAMS Class Action Procedures do not apply to Company's arbitration. This arbitration provision and the procedures applicable to the arbitration contemplated by this provision are governed by the Federal Arbitration Act, notwithstanding any state law that may be applicable.

*Id*. at § 24(f) (the "Class Action Waiver").

The TOUs define "Company" to include Safeway and the TOUs apply to "any and all Company and its banners' websites, online ordering services, and mobile applications linking to or posting these Terms (each a 'Site', collectively, 'Sites')." *See id*. The TOUs further state that "By accessing and/or using any of our Sites, and by continuing to access and/or use any of our Sites, you agree to be bound by these Terms. If you do not agree to these Terms or updated Terms, please do not access or use the Sites." *Id*.

On March 28, 2023, at 6:39 p.m., Plaintiff created an online Safeway for U account through the Safeway App using Plaintiff's Number. Ex. 1, Michael Decl. at ¶ 23. Plaintiff's Safeway for U account is associated with the Loyalty Card Number 49592768166 and Household ID 787027601555. *Id*. In creating her account, Plaintiff acknowledged that she read and understood the TOUs, including that her claims against Safeway would be subject to the Arbitration Agreement. *Id*. at ¶ 25.

## III.   ARGUMENT

### A.   The Court Should Enforce the Arbitration Agreement and Dismiss Plaintiff's Claims Pursuant to the Federal Arbitration Act.

The Federal Arbitration Act ("FAA") governs the Arbitration Agreement at issue here.  Exhibit 1(A), at § 24(f) ("This arbitration provision and the procedures applicable to the arbitration contemplated by this provision are governed by the Federal Arbitration Act, notwithstanding any state law that may be applicable.").  Congress enacted the FAA in 1925 "to reverse the longstanding judicial hostility to arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991).  Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA establishes a "liberal federal policy favoring arbitration," including consumer disputes. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (FAA preempts California rule prohibiting class-action waivers in consumer contracts).  Whenever a "contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Techs., Inc. v. Comm'cns Workers of Am*., 475 U.S. 643, 650 (1986).

The FAA provides that if litigation is filed "upon any issue referable to arbitration under an agreement," the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Further, upon application of a party to the arbitration agreement, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.  The FAA thus "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, *Inc*. *v*. *Byrd*, 470 U.S. 213, 218 (1985).  Any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem [is] an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 (1983).

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank, Corp.*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). In answering these questions, a court may not review the merits of the underlying case, but "may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party." *Fraher v. Verizon Wireless Servs., Ltd. Liab. Co.*, No. 21-cv-00763, 2021 WL 252732, at *2 (S.D. Cal. June 21, 2021).

A court may dismiss—rather than stay—a case where all claims in the action are subject to an arbitration provision. *See Perry v. NorthCentral Univ., Inc.*, No. CV-10-8229-PCT-PGR, 2011 WL 4356499, at *3 (D. Ariz. Sept. 19, 2011) (granting defendant's motion to dismiss under Rule 12(b)(1) based on arbitration agreement) (citing cases); *White v. Merrill Lynch Pierce Fenner & Smith Inc.*, No. CV-21-00941-PHX-JJT, 2022 WL 973590, at *6 (D. Ariz. Mar. 31, 2022), aff'd, No. 22-15659, 2023 WL 5665765 (9th Cir. Sept. 1, 2023) (same); *Anaya v. Brown & Brown Nissan Inc.*, No. CV-15-01054-PHX-DJH, 2015 WL 12830403, at *1 (D. Ariz. Aug. 10, 2015) (same); *Cancer Center Associates for Research and Excellence, Inc. v. Philadelphia Ins. Cos.*, 2015 WL 1766938, at *3 (E.D. Cal. April 17, 2015) (courts have held that a Rule 12 (b)(1) motion to dismiss for lack of subject matter jurisdiction "is a procedurally sufficient mechanism to enforce [an][a]rbitration [p]rovision."); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000); *Cigirex, LLC v. Acosta, Inc.*, No. SACV 14-939 AG (DFMx), 2014 WL 12606496, at *3 (C.D. Cal. Oct. 6, 2014) (dismissing claims under arbitration).

**1.    Plaintiff Agreed to Arbitrate Her Claims Against Safeway.**

Plaintiff agreed to arbitration when she created her Safeway for U account through the Safeway App. Exhibit 1, Michael Decl. at ¶¶ 23-25. As the Ninth Circuit explained, "if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Online

agreements are enforced when "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id*. Thus, "clickwrap" agreements are routinely recognized as valid and binding in the Ninth Circuit. *See id*. ("[C]ourts have routinely found clickwrap agreements enforceable.").

Terms are reasonably conspicuous if they are "displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it." *Id*. at 856; *see also Karim v. Best Buy Co., Inc.*, No. 22-cv-04909-JST, 2023 WL 3801909, at * (N.D. Cal. June 2, 2023) (finding that website provided reasonably conspicuous notice of its terms where the terms were hyperlinked in a notice located above the purchase button); *Lee v. Ticketmaster, LLC*, 817 F. App'x 393, 394 (9th Cir. 2020) (compelling arbitration based on a notice provided above a "Place Order" button).

Courts in the Ninth Circuit have enforced the very terms at issue here. In *Reynolds v. Safeway*, a district court granted Safeway's motion to compel arbitration based on the Arbitration Agreement contained in the TOUs. No. C22-0197TL, 2023 WL 2560853 (W.D. Wash. Mar. 17, 2023). There, the court held that the plaintiff agreed to the Arbitration Agreement by placing an online order because Safeway's online ordering webpage contained a notice located directly above the 'Place Order' button that "[b]y clicking 'Place Order,' you acknowledge that you have read and agree to the Albertsons Companies' Terms of Use." *Id*.

The same conclusion follows here. Before creating her Safeway for U online account, Plaintiff was provided reasonably conspicuous notice that "By continuing, you acknowledge you have read and agree to our Terms of Use, including understanding that disputes will be arbitrated. Learn more[.]" Exhibit 1, Michael Decl. at ¶ 16; Exhibit 1(B). The notice was provided in a standalone paragraph located directly above the field where Plaintiff entered the verification code that was sent to Plaintiff's Number via text message. *See id*. The "Terms of Use" contained a hyperlink to ACI's TOUs. *Id*. Plaintiff then

unambiguously manifested her assent to the TOUs, including the Arbitration Agreement, by inputting the verification code and clicking the "Continue" button. *Id*. at ¶¶ 23-25. Indeed, Plaintiff could not have created her online Safeway for U account without first agreeing to the TOUs. *See id*. Plaintiff therefore agreed to the Arbitration Agreement by creating her Safeway for U account.

### 2. The Arbitrator Must Decide Any Questions of Arbitrability.

The Court does not need to resolve the scope of the Arbitration Agreement because it "clearly and unmistakably" delegates the issue of arbitrability to the arbitrator. *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). When the parties have clearly and unmistakably delegated questions about arbitrability to the arbitrator, the Court need not reach the second inquiry regarding the scope of the agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). This occurs if the parties delegate "jurisdiction" or "arbitrability" disputes to the arbitrator, or if they incorporate arbitration rules that do the same. *Brennan*, 796 F.3d at 1130.

Here, the Arbitration Agreement incorporates the JAMS Streamlined Arbitration Rules & Procedures. Exhibit 1(A), at ¶ 24(a). The JAMS Streamlined Rules state that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, No. CV 19-10337-DSF (JPRx), 2020 WL 2730926, at *2 (C.D. Cal. Mar. 13, 2020) (quoting JAMS's Rules and Procedures). Thus, courts in the Ninth Circuit, including those within this District, have held that where an agreement expressly incorporates the JAMS Streamlined Rules, parties have "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator. *Hayford v. Nationstar Mortgage LLC*, No. CV-16-04480-PHX-JJT, 2017 WL 6032542, at *2 (D. Ariz. Mar. 3, 2017) ("[I]ncorporation of arbitration

- 12 -

rules such as the JAMS Rules in an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Tipp v. AT & S Am. LLC*, No. CV-19-02436-PHX-JJT, 2019 WL 13252775, at *2 (D. Ariz. Sept. 23, 2019) (same); *Lopez v. YourPeople Inc.*, No. CV-16-03982-PHX-JZB, 2017 WL 3086864, at *3 (D. Ariz. July 20, 2017) (same); *Worldwide Film Prods., LLC*, at *6-7 (citing *Brennan*, 796 F.3d at 1130 (9th Cir. 2015) (holding that where an arbitration agreement stated that the "arbitration shall be administered by JAMS pursuant to its JAMS' Comprehensive Arbitration Rules and Procedures," there was "clear and unmistakable evidence of an agreement to arbitrate arbitrability"). In these circumstances, the U.S. Supreme Court has directed that "a court may not override the contract" and thus "possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. In short, the question of arbitrability is for the arbitrator, and, accordingly, there is nothing else for the Court to decide.

Because the parties entered into the valid and binding Arbitration Agreement which clearly and unmistakably delegates arbitrability issues to the arbitrator, the Court should compel Plaintiffs to arbitrate her claims against Safeway.

### 3. The Arbitration Agreement Covers This Dispute.

Even if the issue of arbitrability were for the Court to decide (it is not), Plaintiff's claim nevertheless falls within the scope of the Arbitration Agreement. In assessing whether an arbitration provision covers a particular dispute, "doubts should be resolved in favor of coverage." *See AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 650 (1986) ("unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," courts must defer to arbitration). When an arbitration provision contains a broad scope provision—like "all disputes arising in connection with the agreement"—courts interpret the scope "expansively" to reach every dispute "having a significant relationship to the contract" or "having their origin or genesis in the contract." *Simula, Inc. v. Autoliv*, 175 F.3d 716, 720–21 (9th Cir. 1999).

The Arbitration Agreement contains a broad scope provision. It applies to "all controversies, claims, counterclaims, or other disputes arising between [Plaintiff] and [Safeway] relating to these Terms or arising out of [Plaintiff's] access to or use of any Sites[.]" Exhibit 1(A), at ¶ 24(a). And as noted above, *supra* Section II.B., "Sites" is broadly defined to include Safeway's Website and App. Plaintiff's TCPA claim relates to certain promotional text messages Plaintiff received after she created her Safeway for U online account through the Safeway App and enrolled in the Safeway for U loyalty program. Exhibit 1(B). Plaintiff's claim therefore "aris[es] out of" Plaintiff's use of Safeway's App, and falls squarely within the scope of the Arbitration Agreement.

At bottom, the Arbitration Agreement's broad scope and the presumption of arbitrability mandates a finding that Plaintiff's claim must be arbitrated. The Court should therefore dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and compel her to arbitrate her claims against Safeway in an individual arbitration. *Johnmohammadi v. Bloomingdale's, Inc.*, 735 F.3d 1072, 1074 (9th Cir. 2014) (finding that when a court orders all claims and parties to arbitration, it has discretion to dismiss the action); *Perry*, 2011 WL 4356499, at \*3 (same); *White*, 2022 WL 973590, at \*6 (same); *Anaya*, 2015 WL 12830403, at \*1 (same); *Cigirex, LLC*, 2014 WL 12606496, at \*3 (same).

## IV.    CONCLUSION

For the foregoing reasons, Defendant Safeway Inc. respectfully requests that this Court grant this motion, compel Plaintiff to arbitrate her claims—including any disputes regarding arbitrability—and dismiss the Complaint.[2]

---

[2] The class action waiver in the TOUs precludes Plaintiff from pursuing this case as a class action in court, as well as in arbitration. Thus, even if the case ultimately proceeds forward in court (it should not), the class allegations must be stricken from the Complaint.

DATED:  October 16, 2023

Respectfully Submitted,

*/s/ David S. Norris*

David S. Norris
Petrina A. McDaniel (pro hac vice)
Amy Brown Doolittle (pro hac vice)
Shing C. Tse (pro hac vice)
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016

*Attorneys for Defendant Safeway Inc.*

- 15 -