**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashley Ehrmantraut,<br><br>    Plaintiff,<br><br>v.<br><br>Safeway Incorporated,<br><br>    Defendant. | No. CV-23-01739-PHX-SMB<br><br>**ORDER** |

   Pending before the Court is Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint (Doc. 14). Plaintiff filed a response (Doc. 16), to which Defendant replied (Doc. 18). The Court exercises its discretion to resolve this Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After reviewing the parties' arguments and the relevant law, the Court will grant Defendant's Motion.

**I. BACKGROUND**

   Defendant offers a loyalty program for its customers called "Safeway U." (Doc. 14 at 4.) To join this program, a customer can download the Safeway mobile app (the "app") and register for an account. (*Id.*) These accounts are tied to a customer's mobile phone number or email address. (*Id.*) When a customer downloads the app, they are prompted to enter either their mobile phone number or email address. (*Id.* at 5.) This first screen also contains a hyperlink to the Terms of Use ("TOUs"), which includes the arbitration agreement. (*Id.*) If a customer provides their mobile phone number, they are sent a text

message with a verification code. (*Id.*)

A customer must enter this verification code in the app to proceed. (*Id.*) Right above the box where they enter their verification code, there is a notice that reads: "By continuing, you acknowledge you have read and agree to our Terms of Use, including understanding that disputes will be arbitrated." (*Id.* at 5–6.) The phrase "Terms of Use" is underlined and hyperlinked so that consumers can click on it and access the Terms of Use. (*Id.* at 6.)

The TOUs contain a mandatory arbitration provision and a class action waiver. (Doc. 14-1 at 5–27.) The TOUs are prefaced with a disclaimer in bold and capital letters that states:

> **ATTENTION: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 24 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE COMPANY (AS DEFINED BELOW) ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

(*Id.* at 6.) As stated, Section 24 of the TOUs further delineates this term by stating:

> (a) Except for cases involving claims for public injunctive relief (as defined by law), you and Company agree that all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites (each a "Claim") will be resolved through binding and final arbitration instead of through court proceedings. **This agreement to arbitrate means that each of you and Company waive your/its respective rights to a jury trial.** Any and all Claims shall be submitted for binding arbitration in accordance with the JAMS Streamlined Arbitration Rules & Procedures that are in effect at the time arbitration is initiated ("JAMS Rules"). You may, in arbitration, seek any and all remedies otherwise available to you under applicable federal, state or local laws, except as provided below in subsection (f) of this Section 24. If you decide to initiate arbitration, you agree to pay an arbitration initiation fee of $250 (unless the fee is waived as discussed in subsection (b)(4) of this Section 24), and Company will pay the remainder of the arbitration initiation fee and all other costs of the arbitration proceeding,

including the arbitrator's fees. The arbitration will be held at a location in your hometown area unless you and Company both agree to another location or telephonic arbitration.

(*Id.* at 14) (alteration in original). This Section also includes the class waiver, which states:

Neither you nor Company may act as a class representative, nor participate as a member of a class of claimants, with respect to any Claim. Claims may not be arbitrated on a class or representative basis. The arbitrator can decide only your and/or Company's individual Claims. The arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated. Accordingly, you and Company agree that the JAMS Class Action Procedures do not apply to Company's arbitration. This arbitration provision and the procedures applicable to the arbitration contemplated by this provision are governed by the Federal Arbitration Act, notwithstanding any state law that may be applicable.

(*Id.* at 15.) Additionally, the TOUs define "Company" to include Defendant, and further state that the TOUs apply to "any and all Company and its banners' websites, online ordering services, and mobile applications linking to or posting these Terms." (*Id.* at 6.) Plaintiff created a Safeway for U account on March 28, 2023 using the Safeway app and entered her mobile phone number. (Doc. 14 at 8.)

After creating her account, Plaintiff alleges that Defendant began contacting her via text message about several promotional campaigns. (Doc. 1 at 2–6 ¶¶ 9–22.) Plaintiff contends that she requested to opt-out numerous times, but that her requests were ignored. (*Id.* at 5 ¶ 10–11.) She goes on to allege that Defendant maintains records of text messages with customers, which therefore shows that Defendant "does not honor consumer requests to opt-out of text message solicitations." (*Id.* at 6 ¶ 18.) Plaintiff contends that this "demonstrates that Defendant does not (1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list." (*Id.* ¶ 19.) Plaintiff further alleges that these communications were for the purpose of soliciting the sale of consumer goods and/or services because they were meant to advertise, promote, or market

Defendant's goods and services. (*Id.* at 5 ¶¶ 12–13.)

Based on these allegations, Plaintiff asserts a cause of action for a violation of 47 U.S.C. § 227(c)—the Telephone Consumer Protection Act ("TCPA")—and 47 C.F.R. § 64.1200(d)—the relevant implementing regulation. (*Id.* at 9–10 ¶¶ 35–44.) Plaintiff seeks to represent a nationwide class of plaintiffs that have received these text messages from Defendant after requesting to opt-out. (*Id.* at 7 ¶ 24.) In turn, Defendant filed this Motion. (Doc. 14.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, (2001). The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). Accordingly, arbitration agreements "shall be valid, irrevocable, and enforceable" unless invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339. A district court's authority to compel arbitration stems from Section 4 of the FAA. *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011).

To rule on a motion to compel arbitration under the FAA, a district court must decide (1) whether the parties formed a valid agreement to arbitrate, and, if so, (2) whether the agreement to arbitrate encompasses the underlying dispute. *Collins v. Macy's Inc.*, No. CV-19-02572-PHX-GMS, 2019 WL 5188749, at *2 (D. Ariz. Oct. 15, 2019). If the Court answers both issues in the affirmative, then it must enforce the arbitration agreement. *Equal Employment Opportunity Comm'n v. Cheesecake Factory, Inc.*, No. CV08-1207-PHX-NVW, 2009 WL 1259359, at *2 (D. Ariz. May 6, 2009). Further, if a valid agreement to arbitrate contains a delegation provision, the court's role is limited to analyzing whether the delegation provision itself is valid. *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015). If the delegation provision is valid, the arbitrator must resolve all further issues

regarding arbitrability—including whether the agreement to arbitrate applies to the dispute at issue. *Id.*; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019) (holding when parties "agree to have an arbitrator decide . . . whether their agreement covers a particular controversy," the court "may not decide the arbitrability issue"). The only way to circumvent this rule is by showing that the agreement to delegate arbitrability is itself unenforceable. *Brennan*, 796 F.3d at 1132.

## III. DISCUSSION

Defendant seeks to enforce the TOU's arbitration provision. Defendant argues that Plaintiff unambiguously manifested her assent to be bound by Defendant's TOUs and that the arbitration provision is valid and enforceable. (Doc. 14 at 10–14.) Defendant also argues that the Court does not need to resolve the scope of the arbitration provision because the question is properly delegated to the arbitrator through the referenced JAMS rules. (*Id.* at 12–13.) Plaintiff counters that under Ninth Circuit precedent, the app did not conspicuously distinguish the TOU hyperlink from the surrounding text and therefore was not binding. (Doc. 16 at 4–7.) Plaintiff also argues that the notice in the app failed to give any indication that continuing would result in assenting to a legal agreement. (*Id.* at 7–8.)

To begin, "if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Net, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). An agreement may be found "if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* The Court will address each element in turn.

### A. Reasonably Conspicuous Notice

Here, whether there is meaningful assent "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Satisfaction of this requirement "depends on the design and content of the website and the agreement's webpage" and more

1 specifically "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Id.* Additionally, for notice of a term to be reasonably conspicuous, it "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856.

Here, Defendant argues that the terms were reasonably conspicuous due to the language specifically notifying Plaintiff that proceeding in the app would constitute an agreement to the TOUs, including an understanding that disputes will be arbitrated. (Doc. 14 at 11.) Defendant further argues that the TOUs were underlined and hyperlinked, thereby making them even more conspicuous. (*Id.*) Plaintiff counters that Defendant did not conspicuously distinguish the TOUs hyperlink from the surrounding text. (Doc. 16 at 4–7.) Plaintiff specifically argues that the hyperlink was not distinguished from any of the surrounding text "through the use of blue font, or any color." (*Id.* at 6.)

The Court finds the inclusion of the direct language persuasive. In the box above where a user must place their phone number to get a verification code, the app clearly cautions users that "[b]y continuing, you acknowledge that you have read and agree to our Terms of Use, including understanding that disputes will be arbitrated." (*See* Doc. 14-1 at 29.) This direct language does not require a user to click on the TOUs hyperlink and read the terms to discover the arbitration provision. Rather, the notice in the app unambiguously notifies users that the terms require arbitration. *See also Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022); *Chien v. Bumble, Inc.*, 641 F. Supp. 3d 913, 935 (S.D. Cal. 2022). Moreover, this language is not a tiny font or structured on the page in a manner that directs the user's attention elsewhere. *See Berman*, 30 F.4th at 856–57. This notice is presented in black font against a white background without any of the distracting elements present in *Berman*.

The hyperlink to the TOUs is also conspicuous. Although the hyperlink is the same color text as the rest of the notice, it is underlined and adequately contrasted with the white background. There are no distracting elements that overshadow the visibility of this

hyperlink. Additionally, the hyperlink is the same size as the other text on the page and is clearly set off from the surrounding text as a hyperlink through its underlining. Moreover, there is no specific "color test" employed by the Ninth Circuit. Rather, the Ninth Circuit directs courts to look at the webpage or app in totality. *See Berman*, 30 F.4th at 856–57. Here, the design cues indicating the hyperlink and the hyperlink itself are reasonably conspicuous when viewed in the context of the overall design and content of the page. Taken together, the Court finds that these elements would put a reasonably prudent user on notice of the TOUs. Accordingly, they meet the Ninth Circuit's requirement that the notice be reasonably conspicuous. *Berman*, 30 F.4th at 856.

### B. Unambiguous Manifestation of Assent

Next, Defendant argues that Plaintiff unambiguously manifested her assent to the TOUs. (Doc. 18 at 10–11.) Plaintiff argues that Defendant failed to advise what actions would constitute assent to the TOUs. (Doc. 16 at 7–8.) These types of websites and applications often contain text that explicitly alerts the user that by proceeding, they agree to be bound by TOUs. Courts in this circuit routinely allow these notices to constitute manifestation of assent. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein v. Live Nation Ent.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 857). "[A]ll that is required" is that the text of the notice "explicitly alert the user that by . . . proceeding to the next page, the user 'agrees to our Terms of Use.'" *Id.*; *see also Karim v. Best Buy Co.*, Case No. 22-cv-04909-JST, 2023 WL 3801909, at *3–4 (N.D. Cal. June 2, 2023).

Here, Defendant's notice clearly stated "[B]y continuing, you acknowledge you have read and agree to our Terms of Use, including understanding that disputes will be arbitrated." (*See* Doc. 14-1 at 29.) Plaintiff then entered her verification code underneath this text and clicked the "continue" button to create her account. This leaves no doubt of Plaintiff's acceptance of the TOUs—including the arbitration provision. It also defeats Plaintiff's argument that the notice did not advise a user of what actions would constitute

assent. The Court concludes that Plaintiff unambiguously manifested her assent to the TOUs.

### C. Scope of the Arbitration Provision

Additionally, Defendant argues that the Court need not resolve the scope of the arbitration provision, and Plaintiff does not contest this point. (*See* Doc. 14 at 12.) The Court agrees. The Ninth Circuit has held that an arbitration agreement "clearly and unmistakably" delegates issues of arbitrability to an arbitrator when it incorporates by reference the American Arbitration Association's rules of arbitration. *Brennan*, 796 F.3d at 1130. This Court agrees with other courts that have extended this logic to the JAMS rules, which were incorporated here. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, No. C21-9978, 2022 WL 10584136, at *3 (C.D. Cal. Oct. 18, 2022) (determining that agreement's reference to JAMS Rules delegated issue of arbitrability to the arbitrator); *O'Connor v. Warner Bros. Animation Inc.*, No. C20-9291, 2021 WL 3598581, at *2 (C.D. Cal. Jan. 21, 2021) ("The agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."); *Lopez v. YourPeople Inc.*, No. CV-16-03982-PHX-JZB, 2017 WL 3086864, at *3 (D. Ariz. July 20, 2017) (same). Therefore, the Court finds that the parties agreed to delegate arbitrability to the arbitrator.

In summary, because the parties formed a valid agreement to arbitrate and the Agreement encompasses the underlying dispute, the Court will grant Defendant's Motion. This case will also be dismissed because Plaintiff's claims are subject to the arbitration provision. *Forrest v. Spizzirri*, 62 F.4th 1201, 1205–06 (9th Cir. 2023) (affirming a district court decision compelling arbitration and dismissing case because all claims were subject to arbitration); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) ("We recognize that efficient docket management is often the basis for dismissing a wholly arbitrable matter."). However, this Order does not prevent the parties from filing a potential future action in federal court to enforce an arbitration award, if necessary.

### IV.  CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint (Doc. 14).  This case will be dismissed.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 29th day of April, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge